## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| KIMBERLY DENNIE, individually, on behalf of herself and all others similarly situated, | Case No: 3:24-cv-454 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| BANK OF AMERICA, N.A., | [DEMAND FOR JURY TRIAL] |
| Defendant. | |

Plaintiff Kimberly Dennie ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Bank of America, N.A. ("Bank of America" or "Defendant"), and states:

### I. NATURE OF THE ACTION

1. Every year, more than 2 million consumers fall victim to financial fraud.[1]

2. Plaintiff Kimberly Dennie is one such victim. Immediately after Plaintiff learned that her debit card had been lost and/or stolen, she alerted Bank of America to the loss and submitted a fraud claim identifying over $3,000 in unauthorized charges.

3. Bank of America summarily denied Plaintiff's claims on the grounds that it found "[t]he charge was authorized by you or made by someone who has permission to use the card or account."

---

[1] Federal Trade Commission, "New FTC Data Show Consumers Reported Losing Nearly $8.8 Billion to Scams in 2022." (February 2023).

4. Plaintiff was given no opportunity to contest Bank of America's reasoning for denying the fraud claim or any explanation as to how the Bank reached its conclusion. Despite Plaintiff's request for an explanation and further review, and submitting a police report for the stolen card and fraudulent transactions, Bank of America mechanically rejected Plaintiff's claim without performing a reasonable investigation and instead, issued form denial notices devoid of any factual findings or documentation from its alleged investigation.

5. Bank of America's superficial rejection of Plaintiff's bona fide fraud claim without conducting a proper investigation and the use of form denial notices without any written explanation or supporting documentation violates federal law.

6. Long ago, Congress decided financial institutions—and not consumers—must bear the risk of loss in cases of financial fraud. Financial institutions like Bank of America are therefore required to refund all timely reported fraud losses to consumers unless the financial institution can affirmatively demonstrate that the disputed transactions were in fact authorized.

7. If a financial institution like Bank of America denies a fraud claim, it must provide a substantive written explanation of its findings and must make the supporting documentation available to any consumer who requests it. Thus, by statute, once fraud is reported, Bank of America—not consumers—bears the burden of proving fraud did not occur. Bank of America must meet this burden with evidence and must explain its factual findings in writing.

8. This requirement is more than a formality: financial institutions must explain their findings and provide the requested documentation so that consumers like Plaintiff can refute the financial institution's conclusions. Without such information, consumers like Plaintiff are hamstrung by Bank of America's black-box decision-making.

9.      In sum, Bank of America has adopted a fraud investigation process that systematically flips the statutory burden on its head. Bank of America denies fraud claims for transactions it unilaterally deems to be "authorized" by Plaintiff without providing any substantive explanation as to how or why it has satisfied its burden of demonstrating that the disputed charges were in fact authorized. In practice, this creates a Bank versus the consumer system in which the Bank always wins. This is precisely the type of system federal law was designed to prevent.

10.     Moreover, Bank of America's conduct also constitutes an express breach of its contract with accountholders. Bank of America promises that consumers will not be liable for their losses if their card is lost or stolen if the consumer timely reports the lost or stolen card. But Bank of America routinely fails to honor its promises.

11.     Bank of America's disregard of its statutory and contractual obligations subjects its accountholders like Plaintiff who similarly fell victim to debit card theft to shoulder hundreds of dollars in fraudulent purchases that they did not authorize.

12.     Plaintiff brings this action on behalf of herself and a proposed class of all other similarly situated Bank of America accountholders who timely notified Defendant that one or more charges on their account were unauthorized and were summarily denied reimbursement without a full investigation and explanation because Bank of America unilaterally deemed their transactions to be "authorized"—a process which unlawfully reverses the evidentiary burden and results in the denial of reimbursement for fraud losses which, by statute and its contract, should have been covered by Bank of America.

13.     Plaintiff seeks actual damages, punitive damages, and an injunction on behalf of the general public to prevent the Bank from continuing to engage in its illegal and/or unfair practices as described herein.

## II.    PARTIES

14.    Plaintiff Kimberly Dennie is a citizen and resident of Highland, California and is a Bank of America checking accountholder.

15.    Defendant Bank of America, N.A. is a national bank with its headquarters and principal place of business located in Charlotte, North Carolina. Among other things, Bank of America is engaged in the business of providing retail banking services to consumers, including Plaintiff and the members of the putative class, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. Bank of America operates banking centers and thus, conducts business throughout the United States, including within this district.

## III.    JURISDICTION AND VENUE

16.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises out of violations of federal law under the Electronic Funds Transfer Act (the "EFTA"), 15 U.S.C. §§ 1693, *et seq*. Jurisdiction of this Court arises pursuant to 28 U.S.C. §§ 1331 and 1367 for supplemental jurisdiction over the state law claims asserted herein.

17.    This Court also has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interests and costs, there are at least one hundred (100) people in the putative class, and at least one member of the proposed class is a citizen of a different state than Bank of America.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Bank of America is subject to personal jurisdiction here, has its headquarters in this district, regularly conducts business in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## IV. FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Plaintiff Dennie Was The Victim of Debit Card Fraud

19. More than 2 million consumers are the victims of financial fraud every year.[2]

20. Consumers' fraud losses are expected to reach $165 billion in the next decade as scammers deploy more sophisticated tools and techniques.[3]

21. Plaintiff Dennie had a Bank of America checking account since approximately 2021. In February of 2024, she was a victim of debit card fraud.

22. On or about February 29, 2024, Plaintiff discovered that her Bank of America debit card had been lost, and subsequently noticed several unauthorized transactions had occurred on her account.

23. Immediately, Plaintiff Dennie reported her debit card as lost and/or stolen to Bank of America and Plaintiff submitted a claim of unauthorized debit card activity for over $3,000 in fraudulent purchases.

24. Plaintiff submitted to Bank of America a detailed account as to why these unauthorized transactions were fraudulent purchases. Plaintiff both called Bank of America and went into a branch to explain that her debit card had been lost.

25. Bank of America failed to provisionally credit her account for all the reported fraud claims.

26. In March and April of 2024—shortly after Plaintiff submitted her fraud claims—Bank of America issued notices to her online account informing Plaintiff of its decisions

---

[2] Federal Trade Commission, "New FTC Data Show Consumers Reported Losing Nearly $8.8 Billion to Scams in 2022." (February 2023).
[3] The Nilson Report, "Payment Card Fraud Losses Reach $32.34 Billion." (December 2022).

concerning the fraud claims in which it concluded that it the "charge was authorized by [Plaintiff] or made by someone who has permission to use the card or account." The emails included no additional detail as to the reason the claim was denied. Below is an example of one of the claims Bank of America rejected:



27.     To date, Plaintiff has not been refunded any of the over $3,000 in fraudulent purchases/withdrawals.

28.     Indeed, despite Plaintiff submitting detailed information to prove she incurred unauthorized transactions, and filing a police report documenting the same, Bank of America flatly refused to find any unauthorized transaction occurred and did so without providing any substantive

explanation or justification. It was Bank of America's burden to prove that these disputed transactions were authorized—not Plaintiff's—and its failure to do so is unlawful and unfair to Plaintiff and thousands of other consumers who have to bear the consequences of stolen funds in unlimited sums.

29. As explained more fully below, despite Bank of America's obligation under the EFTA to promptly credit Plaintiff's account, and its contractual promises that she would not be liable for fraudulent charges, Bank of America refused to reimburse the amounts of the stolen fund.

**B. Bank of America Flouts the Requirements of the Electronic Funds Transfer Act Regarding Its Investigation of Fraudulent and Unauthorized Debit Card Transactions**

30. Congress established the Electronic Funds Transfer Act (the "EFTA"), 15 U.S.C. §§ 1693, *et seq.* to guarantee strong protections for consumers who engage in electronic fund transfers with debit cards. Congress' purpose in enacting the EFTA was to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." *Id*. § 1693(b).

31. EFTA is a remedial statute and reflects a congressional policy determination about who should bear the loss for unauthorized electronic fund transfers. Its primary objective is "the protection of individual consumers engaging in electronic fund transfers ["EFTs"] and remittance transfers." 12 C.F.R. § 1005.1(b).

32. EFTA and its implementing regulation, Regulation E, apply to "financial institutions," which include Bank of America, 12 C.F.R. § 1005.2(i).

33. Among the widespread protections afforded under these statutes, financial institutions like Bank of America are required to maintain thorough practices for error resolution, including to promptly investigate fraud claims, to provisionally credit consumers pending an

investigation, to provide consumers with substantive written explanations of its investigations and conclusions, to limit consumer liability for unauthorized transactions, and, if ultimately denying those fraud claims, to bear the burden of proving that a consumers' disputed transactions were in fact authorized.

34.     The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

35.     Specifically, under Section 1693g(b), the financial institution must show that the disputed transfer was authorized:

> BURDEN OF PROOF.--In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a) have been met, and, if the transfer was initiated after the effective date of section 905, that the disclosures required to be made to the consumer under section 905(a)(1) and (2) were in fact made in accordance with such section.

36.     As a Federal Reserve Board Examiner has explained, "if the institution cannot establish the disputed EFT transaction was authorized, the institution must credit the consumer's account."[4]

37.     Bank of America explicitly reverses that burden, regularly denying claims on grounds that Plaintiff "authorized" the charges or the charges were "made by someone who has permission to use the card or account."

---

[4] Scott Sonbuchner, *Error Resolution and Liability Limitations Under Regulations E and Z: Regulatory Requirements, Common Violations, and Sound Practices*, Consumer Compliance Outlook (2021), available at https://www.consumercomplianceoutlook.org/2021/secondissue/error-resolution-and-liability-limitations-under-regulations-e-and-z/.

38.     Further, by statute, Bank of America is required to support any denial with a written explanation of its findings and is required to provide copies of the documents it relied upon in concluding that the disputed transaction was authorized. Specifically, pursuant to 15 U.S.C. § 1693f(d) and 12 C.F.R. § 1005.11(d), Bank of America must provide a written explanation detailing the results of its investigation:

> **Written explanation.** The institution's report of the results of its investigation shall include a written explanation of the institution's findings and shall note the consumer's right to request the documents that the institution relied on in making its determination. Upon request, the institution shall promptly provide copies of the documents.

39.     Bank of America fails to comply with its statutory obligations by failing to provide written explanations of its denials. Instead, Bank of America routinely denies claims without any explanation whatsoever, stating only its conclusion that a claim has been denied.

40.     Bank of America's boilerplate denial letters flip the burden of proof onto consumers to *disprove* the supposed reasonableness of the Bank's investigation. But EFTA puts the burden of proof on financial institutions to show that disputed charges were authorized. 15 U.S.C. § 1693g(b).

41.     Further, the EFTA prohibits financial institutions from using accountholder agreements that waive any rights conferred by the statute. 15 U.S.C. § 1693.

42.     Plaintiff held up her end of the Deposit Agreement and Disclosures by notifying Bank of America within two days of learning of the loss of her debit card and notifying Bank of America within 60 days of the unauthorized transactions. Ex. A, Deposit Agreement and Disclosures, p. 63.

43.     Bank of America did not grant itself the contractual right to conclude it didn't find any transactions were unauthorized without any substantive explanation of its findings. *See id.*

44.     In these ways, Bank of America attempts to use its Deposit Agreement and Disclosures to waive the requirements of the EFTA, in further violation of the statute.

45.     In sum, by denying Plaintiff's claim because it concluded that Plaintiff "authorized" the charges or the charges were "made by someone who has permission to use the card or account" and by failing to provide a written explanation of its findings to support its denial, Bank of America flouts the EFTA's investigation and error resolution requirements and ultimately fails to satisfy its burden of demonstrating that the unauthorized transactions as reported by Plaintiff were in fact authorized. Further, by doing the foregoing in reliance on its Deposit Agreement and Disclosures, Bank of America violates 15 U.S.C. § 1693*l*.

### Bank of America Failed to Provisionally Credit Plaintiff

46.     Upon notice from the consumer, financial institutions must investigate alleged errors and notify consumers of their determinations within ten (10) business days. 15 U.S.C. § 1693f(a).

47.     If a financial institution provisionally recredits the consumer's account, then the financial institution has forty-five (45) days to investigate. *Id*. § 1693f(c).

48.     Bank of America did not provisionally credit Plaintiffs' account for all of the disputed transactions pending its investigation, so it was afforded only ten (10) days, not forty-five (45) days, to investigate.

49.     Plaintiff reported her claim to the Bank on February 29, 2024.

50.     Despite reporting over $3,000 in unauthorized transactions, the Bank only provided a provisional credit of $360 to Plaintiff's account.

51.     On March 4 and 7, 2024, the Bank issued claim denial letters for only some of the fraudulent transactions.

52.     Then, on April 8, 2024, the Bank issued a claim denial for the remaining fraudulent transactions.

53.     On information and belief, information and belief, Bank of America routinely employs this strategy of issuing a denial within ten (10) days, while reserving the right to further investigate within forty-five (45) days, as a work-around for EFTA's requirement to provisionally credit consumers' accounts while it carries out its investigation.

***The Bank's Investigation was Conclusory and Insufficient and Failed to Provide a Written Explanation of Its Findings to Support Its Denial***

54.     Under if the consumer alleges that there has been an unauthorized transfer[5], the consumer's financial institution ***must*** investigate and determine if the allegation is true, correcting any unauthorized transfer that occurred. 12 C.F.R. § 1005, Supp. I at 11(c)(4) (emphasis added).

55.     Financial institutions are liable to the consumer if they do not conduct a good faith investigation of the claim, reject the claim despite not having a reasonable basis to do so, or unreasonably fail to draw from the evidence that no error had occurred. 15 U.S.C. § 1693f(e).

56.     When investigating a consumer's claim of error, which includes unauthorized transfers, 15 U.S.C. § 1693f(f), "the financial institution ***must*** review any relevant information within the institution's own records for the particular account to resolve the consumer's claims." 12 C.F.R. § 1005, Supp. I at 11(c)(4) (emphasis added).

57.     Bank of America received notice from Plaintiff of the facts and circumstances of unauthorized transactions.

---

[5] Under the EFTA, an unauthorized electronic fund transfer is an electronic fund transfer from a consumer's account "initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit."

58.     The Bank ignored or failed to meaningfully consider Plaintiff's transaction histories for a reasonable period of time immediately preceding her claims for consistency with prior transaction history. Specifically, Plaintiff identified specific charges at multiple merchants that Plaintiff had never purchased from before. Plaintiff also pointed out that the account history demonstrates Plaintiff had only previously made low-dollar purchases with her debit card, unlike many of the fraudulent charges that were over $1,000.

59.     Plaintiff also provided the Bank with a copy of the police report for her stolen card and fraudulent transactions after her claim was denied.

60.     Despite this, the Bank's denial letter opaquely stated, "the charge[s] were authorized by your or made by someone who has permission to use the card or account."

61.     Bank of America's boilerplate denial letters fail to explain the review the Bank conducted of its own records, including the specific records the Bank reviewed and how these specific records supported the Bank's "authorized" conclusion.

62.     Bank of America's boilerplate denial letters fail to explain the review it conducted of its own records, including the specific records it reviewed and how these specific records supported the Bank's conclusion that the subject transactions were supposedly "authorized."

63.     Bank of America's boilerplate denial letters flip the burden of proof onto consumers to disprove the supposed reasonableness of the Bank's investigation. But EFTA puts the burden of proof on financial institutions to show that disputed EFTs were authorized.15 U.S.C. § 1693g(b).

***Bank of America failed to comply with its error resolution obligations and did not reimburse Plaintiff for the unauthorized transactions***

64. The EFTA requires that financial institutions limit consumer liability for unauthorized electronic funds transfers to $50 if the consumer notifies the bank within two business days after learning of the loss or theft of an access device such as a debit card. 12 C.F.R. § 205.6(b)(1).

65. Consumer negligence plays no role in determining the consumer's maximum liability. For example, if a consumer wrote their pin number on a debit card which was used by a third party to initiate an unauthorized transaction, the Bank would still have an error resolution obligation to reimburse the consumer. Comment to 12 C.F.R. § 1005.6(b) – 2.

66. In violation of its "error resolution" obligation under 12 C.F.R. § 1005.11, Bank of America did not reimburse Plaintiff losses from the unauthorized transactions.

67. To date, Plaintiff has not been reimbursed for over $3,000 in fraudulent transactions.

## C. Bank of America Breaches Contract Promises that Fraudulent and Unauthorized Debit Card Transactions Come with Zero Fraud Liability, or at a Minimum, Limit Liability

68. Bank of America's Deposit Agreement and Disclosures makes a simple, straightforward promise for debit card transactions:

**Consumer's Liability for Unauthorized Transfers**

Tell us AT ONCE If you believe your card or your personal identification number (PIN) or other code has been lost or stolen. Also, tell us AT ONCE if you believe that an electronic fund transfer has been made without your permission using Information from your check. The best way to keep your possible losses down is to call us immediately.

Your losses could include all of the money in your account plus any transfers from another account or any advances on a credit line if you are enrolled In Balance Connect for overdraft protection.

If you tell us within two business days after you learn of the loss or theft of your card or code, **you can lose no more than $50 if someone uses your card without your permission.**

[…]

Also, if your statement shows transfers that you did not make, including those made by card, code or other means, tell us at once. If you do not tell us within 60 days after the statement was mailed to you, you may not get back any money you lost after the 60 days if we can prove that we could have stopped someone from taking the money if you had told us In time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time periods.

[…]

**Contact In Event of Unauthorized Transfer; and Lost or Stolen Card, PIN or Other Code**

If you believe your card, PIN or other code is lost or stolen, or learned by an unauthorized person, or that someone has transferred or may transfer money from your account without your permission, notify us immediately by calling the number listed below.

Telephone: 800.432.1000

You can also write to us at: Bank of America, PO Box 53137, #7405, Phoenix, AZ 85072-3137

You should also call the number or write to the address listed above If you believe a transfer has been made using the information from your check without your permission unauthorized activity occurs, you agree to cooperate during the investigation and to complete a Lost/Stolen Card and Fraud Claims Report or similar affidavit.

Deposit Agreement and Disclosures, pp. 63-64.

69.     Once Plaintiff Dennie discovered her debit card had been lost or stolen, she duly notified Bank of America of the loss of her debit card within 2 business days of learning of the loss. Thus, under the Agreement, Plaintiff Dennie could "lose no more than $50."

70.     Despite Plaintiffs' timely notification and Bank of America's promises, Plaintiff Dennie's losses total over $3,000.

71.     By imposing liability on Plaintiff for the losses, Bank of America breached its contract.

72.     Bank of America thus unlawfully vests itself with unilateral discretion to confirm or deny whether a fraudulent transaction occurred.

73.     Bank of America has significant discretion in conducting these investigations and has an obligation to conduct these investigations in good faith.

74.     Bank of America fails to conduct these investigations in good faith, and instead summarily denies bona fide fraud claims based on shoddy investigations, completed behind closed doors and without any explanation.

75.     Bank of America's conduct breaches the covenant of good faith and fair dealing.

## V.     CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this action on her own behalf and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed Classes includes:

> All holders of a Bank of America consumer checking account who, within the applicable statute of limitations preceding the filing of this lawsuit up until the date of class certification, notified Bank of America that one or more charges on their account totaling more than $50 were unauthorized and were denied reimbursement with a form letter and without a written explanation of Bank of America's findings demonstrating that the disputed charge(s) were authorized ("Reg E Class").

> All holders of a Bank of America consumer checking account who, within the applicable statute of limitations preceding the filing of this lawsuit up until the date of class certification, timely notified Bank of America that one or more charges on their account were unauthorized and were denied reimbursement by Bank of America ("Breach of Contract Class").

77.     Additionally, Plaintiff proposes California subclasses for each of the foregoing classes ("California Subclasses").

78.     Excluded from the Classes are Defendant, its subsidiaries and affiliates, officers, directors, and any entity in which Defendant has a controlling interest, and the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

79.     The Class and alternative state subclasses defined above are collectively referred to herein as the "Class."  Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

80.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

81.     **Numerosity (Rule 23(a)(1)).** The proposed Classes are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Bank of America's records. The proposed Classes are also sufficiently ascertainable because Bank of America has the administrative capability through its computer systems and other business records to identify all members of the proposed Classes, and such specific information is not otherwise available to Plaintiff.

82.     **Commonality (Rule 23(a)(2)).** The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class members. These questions predominate over questions that may affect only individual Class members because Bank of America has acted on grounds generally applicable to the proposed Classes. Such common legal or factual questions include, but are not limited to:

   a.   Whether Bank of America breached its contract with accountholders or breached the covenant of good faith and fair dealing;

b. Whether Bank of America failed to comply with the EFTA's and Regulation E's unauthorized electronic fund transfers limitations on consumer liability under 15 U.S.C. § 1693g(a) and 12 C.F.R. § 205.6(b)(1);

c. Whether Bank of America failed to satisfy the EFTA's assigned burden upon financial institutions to prove that the disputed electronic transactions were in fact authorized under 15 U.S.C. § 1693g(b);

d. Whether Bank of America's Deposit Agreement and Disclosures violates 15 U.S.C. § 1693*l*;

e. Whether Bank of America failed to comply with the EFTA's and Regulation E's written explanation requirements under 15 U.S.C. § 1693f(d) and 12 C.F.R. § 1005.11(d)(4)(ii) upon denying an accountholder's fraud claim;

f. Whether Bank of America's denial of fraud claims on the grounds that it determined accountholders "authorized" the charges or the charges were made by someone with "permission to use the card or account" occurred without any further written explanation is unlawful under the EFTA;

g. Whether Bank of America's investigations of fraud claims are inadequate, unreasonable, or unfair;

h. Whether Bank of America's practice of denying fraud claims constitutes an unfair, misleading, or unlawful business practice under California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*;

i. Whether Plaintiff and other members of the proposed Classes are entitled to injunctive relief to enjoin Bank of America's from its unlawful business practices described herein; and

j. Whether Plaintiff and other members of the proposed Classes have sustained damages as a result of Bank of America's wrongful business practices described herein and the measure of damages.

83. **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the claims of the other proposed Class members in that they arise out of the same wrongful business practice by Bank of America, as described herein.

84. **Adequacy (Rule 23(a)(4)).** Plaintiff is more than an adequate representative of the proposed Classes in that she has suffered damages as a result of Bank of America's improper business practices. Additionally:

k.  Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

l.  There is no conflict of interest between Plaintiff and the unnamed Class members;

m.  Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

n.  Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

85.  **Predominance & Superiority (Rule 23(b)(3)).** Plaintiff's proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

86.  **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

87. **Particular Issues (Rule 23(c)(4)).** Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). Plaintiff's claims consist of particular issues that are common to all members of the Classes and are capable of class-wide resolution that will significantly advance the litigation.

88. **Application of North Carolina Law to the Class.** With respect to Plaintiff's and Class members' claims, application of North Carolina law is neither arbitrary nor fundamentally unfair because North Carolina has significant contacts and a significant aggregation of contacts that create a state of interest in the claims of Plaintiff and the Class.

89. The State of North Carolina has a significant interest in regulating the conduct of businesses operating within its borders. North Carolina, which seeks to protect the rights and interests of North Carolina and all residents and citizens of the United States against a company headquartered and doing business in North Carolina, has an interest in the Plaintiff's claim.

90. The principal place of business in Bank of America is in Charlotte, North Carolina, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including account and major policy, financial, and legal decisions related to complying with the EFTA and its fraud policies.

91. Bank of America's corporate decisions regarding its misrepresentation and/or omissions regarding its fraud policies were made from and in North Carolina.

92. Bank of America's tortious conduct emanated from North Carolina.

93. Under choice of law principles, the common law of North Carolina applies to the nationwide common law claims of all Class members. Additionally, given North Carolina's significant interest in regulating the conduct of businesses operating within its borders, North Carolina's consumer protection statutes may be applied to non-resident consumer plaintiffs.

## FIRST CAUSE OF ACTION
## North Carolina Unfair and Deceptive Trade Practices Act
## (On Behalf of Plaintiff and the Breach of Contract Class)

94.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

95.     As described herein, Bank of America's practice of misrepresenting its fraud policies and failing to comply with the EFTA constitutes an unfair and deceptive trade practice under N.C.G.S. § 75.1-1 *et seq.*

96.     As described herein, Bank of America's description of its fraud policies in the Deposit Agreement are deceptive and violates the EFTA. These description of its fraud policies are material.

97.     Bank of America's actions affected commerce in North Carolina, as many of its North Carolina customers were improperly denied reimbursement of their fraud claims.

98.      Plaintiff reasonably relied upon Bank of America's deceptive misrepresentations regarding its fraud policies and compliance with the EFTA. Had Plaintiff known that Bank of America would fail to fairly investigate reported erroneous and fraudulent transactions and fail to reimburse accountholders for fraud losses incurred on debit card transactions, they would not have chosen to open a checking account with Bank of America.

99.     Plaintiff has been actually damaged as the direct and proximate result of Bank of America's unfair competition and unfair and deceptive trade practices.

100.    Plaintiff and the Class are entitled to recovery of treble damages and, in the discretion of the Court, reasonable attorneys' fees and costs by virtue of BofA's unfair and deceptive trade practices.

## SECOND CAUSE OF ACTION
### Breach of Contract Including Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Breach of Contract Class and California Subclass)

101.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

102.     Plaintiff and members of the Classes contracted with Bank of America for checking account services, as embodied in the Deposit Agreement & Disclosures.

103.     Bank of America breached the terms of its contract with consumers when, as described herein, Bank of America failed to fairly investigate reported erroneous and fraudulent transactions and failed to reimburse accountholders for fraud losses incurred on debit card transactions.

104.     Further, under the law of each of the states where Bank of America does business, an implied covenant of good faith and fair dealing governs every contract. The covenant of good faith and fair dealing constrains Bank of America's discretion to abuse self-granted contractual powers.

105.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

106.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

107.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

108.    Bank of America breached the covenant of good faith and fair dealing when it failed to fairly investigate reported erroneous and fraudulent transactions and failed to reimburse accountholders for fraudulent losses incurred on debit card transactions.

109.    Each of Bank of America's actions were done in bad faith and were arbitrary and capricious.

110.    Plaintiff and members of the Classes have performed all of the obligations imposed on them under the contract.

111.    Plaintiff and members of the Classes have sustained monetary damages as a result of Bank of America's breaches of the contract and covenant of good faith and fair dealing.

### THIRD CAUSE OF ACTION
### Violation of the Electronic Funds Transfers Act ("EFTA")
### 15 U.S.C. §§ 1693, *et seq.*; 12 C.F.R. §§ 1005.1, *et seq.* ("Regulation E" of the EFTA)
### (On Behalf of Plaintiff and the Reg. E Class)

112.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

113.    Plaintiff brings this cause of action pursuant to the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq.,* and Regulation E of the EFTA, 12 C.F.R. §§ 1005.1, *et seq.*

114.    The primary objective of the EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers." 12 C.F.R. § 1005.1(b).

115.     Financial institutions have error resolution obligations pursuant to Regulation E in the event that a consumer notifies the financial institution of an error. 12 C.F.R. § 1005.11.

116.     Plaintiff notified Bank of America of an error and the amount of the error.

117.     Bank of America failed to provisionally credit Plaintiff's accounts. *See* 15 U.S.C. § 1693f(a); 12 C.F.R. § 205.11(c)(2).

118.     The EFTA provides strong protection for consumers arising from unauthorized transactions, including by requiring that financial institutions limit consumer liability for unauthorized funds transfers to $50 if the consumer notifies the financial institution within two business days after learning of the loss or theft of a debit card, or within sixty (60) days of transmittal of the account statement reflecting the unauthorized transactions. *See* 15 U.S.C. § 1693g(a).

119.     Regulation E similarly provides that "[a] consumer's liability for an unauthorized electronic transfer or a series of related unauthorized transfers shall be determined as follows: . . . If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution." 12 C.F.R. § 205.6(b)(1).

120.     The EFTA further places the burden on the financial institution to demonstrate that challenged transfers were in fact authorized. *See* 15 U.S.C. § 1693g(b) ("In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized . . .").

121.    Bank of America explicitly reverses that burden, regularly denying claims on grounds that the claims were "authorized" or "made by" someone with permission to use the account.

122.    Bank of America failed to comply with its EFTA and Regulation E duties to properly investigate reported claims of error. See 15 U.S.C. § 1693f(c); 12 C.F.R. § 205.11(c)(4).

123.    Bank of America did not make a good faith investigation and instead summarily denied bona fide fraud claims.

124.    Bank of America refused to reimburse Plaintiff after it deemed its investigation concluded.

125.    Accordingly, Bank of America failed to comply with its error resolution and reimbursement obligations to Plaintiffs under EFTA, 15 § U.S.C. 1693f–1693g, and Regulation E. See 12 C.F.R. § 1005.11.

126.    Additionally, the EFTA requires that in the event the financial institution determines that an error did *not* occur, it is required to provide the consumer with "an explanation of its findings" and "upon the request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relief on to conclude such error did not occur." 15 U.S.C. § 1693f(d).

127.    Similarly, Regulation E provides that if the financial institution determines "no error" occurred, then it is required to provide a written explanation to justify its denial:

> **Written explanation.** The institution's report of the results of its investigation shall include a written explanation of the institution's findings and shall note the consumer's right to request the documents that the institution relied on in making its determination. Upon request, the institution shall promptly provide copies of the documents.

128.    Bank of America fails to provide a written explanation of the results of its investigation and instead relies on form letters which state in conclusory fashion, the "charge was authorized by you or made by someone who has permission to use the card or account." Such letters do not comply with the EFTA's requirements because they fail to explain to consumers why their claim was denied, thus making it impossible to challenge the financial institution's findings.

129.    Bank of America's boilerplate denial letters fail to explain whether the Bank, in reviewing its own records, considered: the sum of each electronic fund transfer, the recipient or merchant of each electronic fund transfer, the number of electronic fund transfers processed in one day, and whether the Plaintiff had previously solicited the merchant(s).

130.    Further, the EFTA prohibits financial institutions from using accountholder agreements that waive any rights conferred by the statute. 15 U.S.C. § 1693*l*.

131.    A financial institution will be held liable to the consumer for treble damages where "the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation." 15 U.S.C. § 1693f(e)(2).

132.    Plaintiff provided notice to Bank of America within two business days of discovering that her debit card had been lost and that there were unauthorized charges.

133.    By denying Plaintiff's claim because it found the transactions had been "authorized" or made by someone with "permission", and by failing to provide a written explanation detailing its investigation and findings, Bank of America flouts the EFTA and Regulation E's investigation and error resolution requirements and ultimately fails to satisfy its burden of proving that the unauthorized transactions as reported by Plaintiff were in fact authorized.

134.     Bank of America's affirmative actions and omissions violate the EFTA and Regulation E whose "primary objective[s]" are "the protection of consumers" and "the protection of individual consumer rights." *See* 12 C.F.R. § 1005.1(b); 15 U.S.C. § 1693(b).

135.     As a direct and proximate result of Defendant's improper conduct outlined herein, Plaintiff and members of the putative class have suffered financial harm in the form of being on the hook for hundreds of dollars in fraudulent purchases that they did not authorize.

136.     Accordingly, Plaintiff and members of the putative class are entitled to an award of statutory and actual damages, including attorneys' fees and costs, as set forth under 15 U.S.C. § 1693m(a).

137.     Additionally, Plaintiff and members of the putative class are entitled to treble damages pursuant to 15 U.S.C. § 1693f(e) given Bank of America's knowing and willful inadequate investigations of Plaintiff's and absent class members' fraud claims.

### FOURTH CAUSE OF ACTION
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof Code § 17200, *et seq.*
### (On Behalf of Plaintiff and the California Subclasses)

138.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

139.     Plaintiff and members of the putative class have standing to pursue a cause of action against Defendant for unfair, unlawful, and fraudulent business acts or practices because they have suffered an injury-in-fact and lost money due to Defendant's actions and/or omissions as set forth herein.

140.     Defendant's conduct is unlawful under Bus. & Prof. Code § 17200 *et seq.* because it is in violation of the EFTA and Regulation E, as discussed above.

141.     Defendant's conduct described herein is "unfair" under Bus. & Prof. Code § 17200 because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the Classes, and the public. Specifically, Bank of America wrongfully denies consumers' fraud claims and disputes regarding unauthorized transactions after failing to properly investigate those claims, failing to provide adequate written explanation for the denial of those claims, and by ultimately failing to satisfy its burden to prove that the disputed transactions were in fact authorized. The financial harm to consumers as a result of Bank of America's wrongful business practices is substantial in that consumers are forced to pay hundreds of dollars for unauthorized purchases arising from fraud or theft that was out of their own control.

142.     Defendant's conduct described herein is "fraudulent" under Bus. & Prof. Code § 17200 because Bank of America's business practices have misled Plaintiff and the Classes and will continue to mislead them in the future.

143.     Plaintiff relied on Bank of America's misrepresentations about its fraud policies insofar as Plaintiff believed she would be refunded for unauthorized transactions if her debit card was lost or stolen. By misrepresenting material facts as to its policies, Bank of America deceived Plaintiff and the class into making banking decisions they otherwise would not make.

144.     As a direct and proximate result of Bank of America's misconduct, Plaintiff and the Classes have suffered and will continue to suffer harm.

145.     Plaintiff and the putative Classes are entitled to restitution of all funds wrongfully obtained by Bank of America through their unlawful and unfair business practices as described herein.

146.    Defendant's wrongful conduct is ongoing and is part of a pattern or generalized course of conduct repeated on thousands of occasions yearly.

147.    Plaintiff remains a Bank of America accountholder and as such may be subject to the same wrongful conduct in the future unless Bank of America is enjoined. Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining Defendant from continuing to engage in the unfair and unlawful business practices described above, or any other act prohibited by law.

148.    Additionally, Plaintiff and the putative Class members seek an order requiring Defendant to pay attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Bank of America for herself and the proposed Class members as follows:

a.  Certifying the proposed Classes, appointing Plaintiff as representative of the Classes, and appointing Plaintiff's counsel as class counsel for the proposed Classes;

b.  Declaring that Bank of America's policies and practices described herein constitute a breach of contract and breach of the covenant of good faith and fair dealing;

c.  Declaring that Bank of America's policies and practices described herein constitute violations of the consumer protection statutes described herein;

d.  Enjoining Bank of America from the wrongful conduct as described herein on behalf of the general public;

e.  Awarding actual damages and statutory damages in an amount according to proof;

f.  Awarding treble damages, if permitted by law;

g.  Awarding pre-judgment interest at the maximum rate permitted by applicable law;

h.  Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

i.    Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demands a jury trial on all issues in this complaint that are so triable as a matter of right.

Dated:  May 6, 2024                              Respectfully submitted,


                                            */s/ David M. Wilkerson*
                                            David M. Wilkerson
                                            NC State Bar No. 35742
                                            **THE VAN WINKLE LAW FIRM**
                                            11 North Market Street
                                            Asheville, NC 28801
                                            (828) 258-2991
                                            *dwilkerson@vwlawfirm.com*

                                            Andrew J. Shamis
                                            Edwin E. Elliott
                                            **SHAMIS & GENTILE, P.A.**
                                            14 N.E. 1st Ave. St. 1205
                                            Miami, FL 33132
                                            (305) 479-2299
                                            ashamis@shamisgentile.com
                                            edwine@shamisgentile.com

                                            Sophia Goren Gold
                                            **KALIELGOLD PLLC**
                                            950 Gilman Street, Suite 200
                                            Berkeley, CA 94710
                                            (202) 350-4783
                                            sgold@kalielgold.com

                                            Scott Edelsberg
                                            **EDELSBERG LAW, P.A.**
                                            20900 NE 30th Ave., Suite 417
                                            Aventura, FL 33180
                                            (786) 289-9471
                                            chris@edelsberglaw.com

                                            *Counsel  for Plaintiff and the Proposed Classes*